IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-00792-CNS-NRN

JANE DOE,

      Plaintiff,

v.

JAMES BRANDON CZEREPUSKO,

      Defendant.

---

## ORDER

---

Before the Court is Plaintiff's Motion to Proceed Under a Pseudonym With Incorporated Authority, ECF No. 2, and Motion for Immediate (Ex Parte) Temporary Restraining Order, ECF No. 9. After examining the motion and relevant legal authority, the Court concludes responsive briefing would not materially assist the Court's resolution of the motions. As explained below, the Court **GRANTS** Plaintiff's request to proceed under a pseudonym and **GRANTS** Plaintiff's request for a temporary restraining order. Additionally, the parties are to appear for a hearing before the Court on **Tuesday, March 31, 2026 at 1:00 p.m.**

### I.    ANALYSIS

**A. Plaintiff's Motion to Proceed Under a Pseudonym**

Plaintiff's first motion seeks permission for Plaintiff to proceed under a pseudonym in this matter pursuant to 15 U.S.C. § 6851(3)(B) because the case arises from

1

Defendant's alleged disclosure online of Plaintiff's private, intimate photographs and sexually explicit activity without Plaintiff's consent. ECF No. 2 at 2.

The Federal Rules of Civil Procedure require that pleadings contain parties' names. *See* Fed. R. Civ. P 10(a) ("The title of the complaint must name all the parties."); Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest."). "However, parties may be pseudonymized under certain circumstances." *D.B.U. v. Trump*, No. 1:25-CV-01163-CNS, 2025 WL 1101149, at *1 (D. Colo. Apr. 14, 2025) (citing *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). Here, Plaintiff's request is made pursuant to 15 U.S.C. § 6851(3)(B), which concerns "[c]ivil action[s] relating to [the] disclosure of intimate images," and which provides courts with authority to "grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym." Additionally, Plaintiff invokes C.R.S. § 13-21-1405, *see* ECF No. 2 at 2, which "specifically provides [that] a plaintiff bringing a claim thereunder may proceed under a pseudonym." *Doe v. Willis*, No. 23-cv-2171-REB-SBP, 2023 WL 6907100, at *2 (D. Colo. Sept. 22, 2023); *see also* C.R.S. § 13-21-1405(1)(a)–(b) ("A plaintiff may proceed using a pseudonym in place of the true name of the plaintiff" and "[t]he court may exclude or redact from all pleadings and documents filed in the action other identifying characteristics of the plaintiff.")). Given that Plaintiff brings claims under 15 U.S.C. § 6851; C.R.S. § 13-21-1401, *et. Seq.*; and Fla. Stat. § 784.049 arising from Defendant's alleged unauthorized disclosure on the internet of Plaintiff's sexually explicit photographs and videos, Plaintiff has clearly established the type of action covered by the pseudonym provisions

contemplated by the Colorado and federal statutes to which Plaintiff cites. *See* C.R.S. § 13-21-1405(1); 15 U.S.C. § 6851(3)(B).[1]

The invocation of these statutes notwithstanding, Plaintiff has also demonstrated the presence of at least two of the three "exceptional" circumstances that the Tenth Circuit has determined justify permitting a party to proceed under a pseudonym: (1) "cases involving matters of a highly sensitive and personal nature," (2) cases involving a "real danger of physical harm," or (3) "where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Femedeer*, 227 F.3d at 1246 (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)).

*First*, this case clearly involves a matter of a highly sensitive and personal nature as contemplated by *Femedeer*, given that it arises from Defendant's alleged unauthorized disclosure of Plaintiff's intimate images on the internet. *See, e.g.*, *Willis*, 2023 WL 6907100, at *1–2 (permitting plaintiff to proceed under a pseudonym in a case involving "matters of the most intimate and sensitive nature" where plaintiff's claims arise from defendants' non-consensual disclosure of plaintiff's intimate images). The following facts, taken from Plaintiff's complaint, demonstrate the highly sensitive and personal nature of this action. *See generally* ECF No. 1. When Plaintiff and Defendant were previously engaged in an intimate relationship, Defendant pressured Plaintiff to take intimate images of herself engaged in sexual acts, and Defendant would harass and demean Plaintiff if

---

[1] As one Court has observed, although the Colorado statute provides that a Plaintiff may proceed under a pseudonym, the anonymity provision in the federal statute 15 U.S.C. § 6851(b)(3)(B), contains "language [that] is somewhat less clear as to a plaintiff's right to anonymity throughout the [entirety] of the action." *Willis*, 2023 WL 6907100, at *2. Regardless, as explained above, the Court finds that it is proper for the Plaintiff to proceed under a pseudonym.

she did not comply. *Id.* ¶¶ 9–11. Some images were taken without Plaintiff's consent. *Id.* ¶ 12. The parties' relationship subsequently ended, and Defendant reacted poorly to the breakup, including by engaging "in harassing behaviors which included calling Plaintiff's workplace, hacking her phone, and tracking her location." *Id.* ¶¶ 13–15. Years later, after announcing her engagement over social media, Plaintiff began receiving messages online from unknown individuals "containing sexually explicit statements indicating that they had seen intimate images of her online." *Id.* ¶¶ 16–18. After investigating how these unknown individuals came to possess these images, Plaintiff learned that her "extremely intimate and private sexual photographs and at least one video" were "posted on at least 28 different websites," including on a website dedicated to revenge porn. *Id.* ¶¶ 20–23. Plaintiff asserts that all of the explicit images she found online were from her time in a relationship with Defendant and that Defendant was the only person she ever gave permission to view or possess those images. *Id.* ¶¶ 23–24. It is indisputable that such matters, by their very nature, are highly sensitive and personal and would alone justify Plaintiff's request to proceed under a pseudonym.

*Second*, a failure to protect Plaintiff's anonymity would result in her incurring the very injury she is attempting to litigate against. As Plaintiff explains it, because this "entire case is about Defendant disclosing the private, intimate, nude photographs and sexually explicit activity of Plaintiff without Plaintiff's permission, and doing so with the specific intent to embarrass and cause damage to Plaintiff and her reputation through those disclosures," requiring Plaintiff to disclosure her identity would result in her suffering additional harm in order to prosecute this action. ECF No. 2 at 2–3. The Court agrees that

in light of the facts, "revealing plaintiff's identity plainly will incur, and thus compound, the very harm [s]he already allegedly has suffered as a result of [defendant's] alleged disclosures" of her intimate images. *Willis*, 2023 WL 6907100, at *2 (citing *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61, 66 (1st Cir. 2022)). Additionally, Plaintiff's representation that "Defendant will instantly know who Plaintiff is because, based upon information and belief, he has only done this to one person on or about October of 2025," *id.* at 3, lessens any claims of prejudice that may result from her use of a pseudonym. *See Doe v. Reese*, No. 8:26CV14, 2026 WL 94123, at *1 (D. Neb. Jan. 13, 2026) ("[D]efendants' knowledge of the plaintiffs' identities 'lessens their claims to be prejudiced by the use of pseudonyms.'") (quoting *Cody v. City of St. Louis,* No. 4:17-CV-2707-AGF, 2022 WL 1202354 *2 (E.D. Mo. Apr. 22, 2022)).

Accordingly, the Court GRANTS Plaintiff's motion to proceed under a pseudonym in this action, ECF No. 2, including in the filing of any affidavits, unless otherwise directed by the Court. In light of this Order, all parties are hereby prohibited from (1) disclosing Plaintiff's identity in any documents and pleadings filed with the Court, and (2) identifying Plaintiff to any and all individuals not involved in this case.

### B.  Plaintiff's Motion for a Temporary Restraining Order

Having dispensed with Plaintiff's first motion, the Court turns to Plaintiff's motion for an *ex parte* temporary restraining order (TRO). ECF No. 9. In the motion, Plaintiff asks that this Court enter issue a TRO "barring Defendant James Brandon Czerepusko from [(1)] disclosing Plaintiff's identity[;]" (2) "sharing any additional nude or sexually explicit photographs or videos of Plaintiff[;]" (3) "harassing, molesting, intimidating, or retaliating

against Plaintiff[;]" and (4) "post[ing] any further intimate images of Plaintiff or encourage others to contact her." *Id.* at 3. Plaintiff argues that a TRO is necessary because, without it, "Defendant poses a risk to Plaintiff by further exposing her to electronic forms of harassment and retaliation and has shown a willingness to do so through his past actions." *Id.* at 2. The Court agrees.

"Granting a temporary restraining order is extraordinary relief." *Gess v. USMS*, No. 20-v-01790-PAB-STV, 2020 WL 8838280, at *20 (D. Colo. Dec. 10, 2020), *report and recommendation adopted in part sub nom. Gess v. USMS & 10th Cir. Dist. Ct.*, No. 20-cv-01790-PAB-STV, 2021 WL 423436 (D. Colo. Feb. 5, 2021) (citing *Soskin v. Reinertson*, 260 F. Supp. 2d 1055, 1057 (D. Colo. 2003)). "A party seeking a TRO must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Browne v. City of Grand Junction, Colorado*, 27 F. Supp. 3d 1161, 1165 (D. Colo. 2014) (citing *RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1208 (10th Cir. 2009)). In addition, for a court to issue a TRO *ex parte*, the moving party must satisfy two additional requirements. First, the movant must set forth "specific facts in an affidavit . . . clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, "the movant's attorney [must] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Despite this high bar, "[t]he Court finds that this is the rare case that merits a TRO." *Raina v. EBIX, Inc.*, No. 1:25-cv-05033-LMM, 2025 WL 3567278, at *1 (N.D. Ga. Sept. 8, 2025) (granting plaintiff's motion for a TRO because plaintiff "is likely to succeed on the merits of the claim he asserts under 15 U.S.C. § 6851 for non-consensual disclosure of intimate images; absent ex parte emergency relief, there is an imminent risk that Defendant . . . will publish sexually explicit depictions of Plaintiff and his wife without their consent, a harm for which there would be no adequate legal remedy; and the threatened injury far outweighs the interest of Defendant and the public"). As explained below, Plaintiff has demonstrated each of the factors necessary to obtain an *ex parte* TRO.

***First***, the Court finds that Plaintiff is likely to succeed on, at least, her claim under Colorado law. Under C.R.S. § 13-21-1403(2), Colorado provides a civil right of action for

> a depicted individual who is identifiable and who has suffered harm from a person's intentional disclosure or threatened disclosure of an intimate image that was private without the depicted individual's consent has a cause of action against the person if the person knew or acted with reckless disregard for whether: (a) The depicted individual did not consent to the disclosure; (b) The intimate image was private; and (c) The depicted individual was identifiable.

C.R.S. § 1403(2)(a)–(c). Thus, to establish that she is likely to succeed on the merits of her claim, Plaintiff must satisfy four elements: (1) Defendant intentionally disclosed (or threatened to disclose); (2) a private and intimate image of Plaintiff; (3) in which Plaintiff is identifiable; (4) without Plaintiff's consent; and (5) Defendant's intentional disclosure harmed Plaintiff. C.R.S. § 1403(1)-(2).

The affidavit submitted in connection with Plaintiff's TRO motion establishes the first three elements to the Court's satisfaction. Specifically, the affidavit represents that

Defendant is "in possession of Plaintiff's intimate images" that he has been "posting . . . across numerous websites;" ECF No. 9-1 (Cohn Aff.) ¶¶ 4, 5, and that Defendant has been "post[ing] Plaintiff's personal information, including her name and social media accounts, attached to these images on various websites," *id.* ¶ 6. Additionally, Plaintiff's motion makes clear that these intimate images were posted "without her consent." ECF No. 9 at 2; *see also* ECF No. 1 ¶ 38 (alleging that "Plaintiff did not consent to the disclosures of her private intimate images by Defendant"). Finally, Plaintiff alleges that she has "suffered harm from Defendant['s] intentional disclosure of her private intimate images, including embarrassment and emotional distress." ECF No. 1 ¶ 37. In light of these representations, the Court finds that there is a high likelihood that Plaintiff will be able to succeed on her claim against Defendant under Colorado law § 1403(1)-(2). Accordingly, the first factor weighs in Plaintiff's favor.

**Second**, it is clear that absent the entry of a TRO, Plaintiff is likely to suffer irreparable harm. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier v. University of Colorado,* 427 F.3d 1253, 1267 (10th Cir. 2005) (citation omitted). Even "serious or substantial harm is not irreparable harm." *Id.* (internal quotation marks and citation omitted). "[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks and citation omitted). "The party seeking injunctive relief must show that

the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Schrier,* 427 F.3d at 1267 (internal quotation marks and citation omitted).

The Court is persuaded by Plaintiff's argument that irreparable harm is likely in the absence of a TRO and that "Defendant poses a risk to Plaintiff by further exposing her to electronic forms of harassment and retaliation and has shown a willingness to do so through his past actions," ECF No. 9 at 2, given that Plaintiff has already found online intimate images of her that are only in Defendant's possession. The allegations in Plaintiff's complaint further underscore the likelihood that Defendant will engage in additional retaliatory acts against Plaintiff absent a TRO, as he has done so in the past in other circumstances. *See, e.g.*, ECF No. 1 ¶ 14 (stating that "Defendant reacted poorly to the [parties'] breakup and engaged in harassing behaviors which included calling Plaintiff's workplace, hacking her phone, and tracking her location").

Defendant's existing unauthorized dissemination of Plaintiff's intimate photos has already resulted in harm to Plaintiff, "including embarrassment and emotional distress," as well as Plaintiff "being harassed by strangers and the likely permanent availability of her intimate images online." ECF No. 1 ¶¶ 37, 41. That there is a high likelihood that Defendant may do so again is "a harm for which there would be no adequate legal remedy." *Raina*, 2025 WL 3567278, at *1. Indeed, "[c]ourts around the country 'have considered the threat of further dissemination of sexually explicit images to constitute irreparable harm because of the images' uniquely sensitive nature.'" *Doe v. Alame*, No. 3:25-CV-0329-B, 2025 WL 713120, at *3 (N.D. Tex. Feb. 24, 2025) (collecting cases).

This conclusion is intuitive. Information, once on the internet, is incredibly difficult to contain or erase. No monetary reward can adequately compensate the injury Plaintiff would suffer in the event Defendant were to continue disseminating Plaintiff's intimate images without her consent.

The irreparable harm Plaintiff articulates speaks both to the ordinary preliminary injunction factors, as well as the requirement for an *ex parte* TRO under Rule 65(b)(1)(A) which demands that a movant set forth "specific facts in an affidavit . . . clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." As discussed above, the sworn affidavit submitted in connection with Plaintiff's motion makes clear that, absent a TRO, Plaintiff is highly likely to suffer another irreparable injury if Defendant continues disseminating intimate images of her online without her consent. *See, e.g.*, *Broadrick v. Gilroy*, No. 3:24-CV-1772 (VAB), 2024 WL 4723332, at *1 (D. Conn. Nov. 9, 2024) (granting Plaintiff's request for an *ex parte* TRO where plaintiff, whose intimate images were already published online without his consent, was "suffering and is likely to continue suffering" absent injunctive relief because such harm "would not be addressed by legal remedies"). Accordingly, this factor weighs in Plaintiff's favor.

***Third***, the Court finds that the balance of equities among the parties weighs in favor of Plaintiff and against Defendant. As another court has observed: "'The impact of revenge porn can include public shame and humiliation, an inability to find new romantic partners, mental health effects such as depression and anxiety, job loss or problems securing new employment, and offline harassment and stalking.' Plaintiff continues to

10

suffer these consequences each day, while Defendant faces no discernable burden from an order prohibiting publication of sexually explicit videos of Plaintiff." *Diaz v. Hernandez*, No. 24-81151-CIV, 2024 WL 5341743, at *3 (S.D. Fla. Oct. 29, 2024) (citation omitted). The same here is true for Plaintiff here. At this stage, all Plaintiff seeks is an order enjoining Defendant "from further disclosing the sexually explicit image[s] of [her that Defendant] possesses. [A TRO] would ask nothing more of [Defendant] than that [he] comply with the law. Further dissemination of the image[s] would serve no lawful purpose, and [Defendant] will not be harmed for refraining from doing so." *Doe v. Serpa*, No. 3:25-CV-0057-X, 2025 WL 332555, at *3 (N.D. Tex. Jan. 29, 2025). Thus, the balance of the equities weighs in Plaintiff's favor.

**Fourth**, the Court is satisfied that no adverse harm to the public will result from the entry of a TRO in this matter. Indeed, the public has a "strong interest in preventing the nonconsensual dissemination of another's intimate visual images." *Diaz*, WL 5341743, at *3. This is clear not only from Colorado's passage of C.R.S. § 1403, but also the fact that both Florida and the United States Congress have also passed similar laws. *See, e.g.*, *id.* (discussing the passage of 15 U.S.C. § 6851(b)(3)) (citing *Doe v. Constant*, No. 24-554, 2024 WL 3512136, at *4 (W.D. La. July 23, 2024)). And as another court has observed, "[t]he rise in legislative action recognizes the potential for far-reaching and long-lasting effects on victims' relationships, mental health, employment, and physical and emotional safety, not to mention the effects of shame or humiliation that can be difficult to escape or limit" when their intimate images are shared online without their consent. *K.I. v. Tyagi*, No. CV 1:23-2383-JRR, 2024 WL 4732703, at *4 (D. Md. Nov. 8, 2024), *report and*

11

*recommendation adopted*, No. 1:23-CV-02383-JRR, 2024 WL 5399243 (D. Md. Nov. 25, 2024) (citing *Constant*, 2024 WL 3512136, at *4). The Court agrees with the risks identified by other courts. Considering this, "rather than harm the public interest, [a TRO] upholds protections the federal and state governments expressly provide by law and protects both [Plaintiff's] privacy and dignity." *Serpa*, 2025 WL 332555, at *4. Accordingly, this factor weighs in Plaintiff's favor.

**Finally**, in order for Plaintiff to receive an *ex parte* TRO, her attorney must certify "in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). In this case, Defendant has not yet been served in this action, let alone received a copy of the TRO motion, despite Magistrate Judge Neureiter's February 26, 2026 order "that Plaintiff shall promptly serve Defendants." ECF No. 6. However, the affidavit submitted by Plaintiff's attorney explains that Defendant has not yet been given notice because "[i]f Defendant is given notice of the present case without a restraining order also attached, I believe there is an extreme risk that he may destroy evidence, lash out at Plaintiff in a manner that would further harm her reputation, disclose her identity to the public, or take actions that would be injurious to her mental health." ECF No. 9-1 ¶ 8. Given this, and in light of Plaintiff's representation that Defendant has already engaged in the same statutorily prohibited conduct that Plaintiff now seeks to enjoin, the Court finds good cause to excuse the notice requirement in Rule 65(b)(1)(B).

Taken together, the Court finds that the TRO factors lean in Plaintiff's favor and that Plaintiff has met the requirements necessary for the Court to grant an *ex parte* TRO. Accordingly, Plaintiff's motion for an *ex parte* TRO, ECF No. 9, is GRANTED.

12

## II.     CONCLUSION

Consistent with the foregoing, the Court hereby ORDERS that Plaintiff's Motion To Proceed Under a Pseudonym With Incorporated Authority, ECF No. 2, is **GRANTED**. Plaintiff may proceed under a pseudonym, including in the filing of any affidavits, unless otherwise directed by the Court. Additionally, all parties are hereby **PROHIBITED** from (1) disclosing Plaintiff's identity in any documents and pleadings filed with the Court, and (2) identifying Plaintiff to any and all individuals not involved in this case.

Additionally, Plaintiff's Motion for Immediate (Ex Parte) Temporary Restraining Order, ECF No. 9, is **GRANTED**, and the Court orders the following:

1. Defendant James Brandon Czerepusko shall not disclose to anyone Plaintiff's identity in connection with this lawsuit or with any of the intimate images or videos of Plaintiff he may have already disseminated;

2. Defendant shall not share any additional nude or sexually explicit photographs or videos of Plaintiff with anyone;

3. Defendant shall not engage in any behavior intended to harass, molest, intimidate, or retaliate against Plaintiff; and

4. In connection with any existing images or videos posted online, Defendant shall not share Plaintiff's personal information online or encourage others to contact her.

Additionally, counsel for Plaintiff is **ORDERED** to serve the Complaint and this Order on Defendant immediately, but no later than **Tuesday, March 24, 2026**, and file proof of service on the docket. To the extent Plaintiff's counsel is aware of any counsel

13

for Defendant, the Complaint and this Order are to be provided to any such counsel.

Failure to meet this deadline may result in a change to the scheduled hearing.

Finally, the Court **ORDERS** Defendant and Plaintiff to appear for a hearing before

the Court on **Tuesday, March 31, 2026 at 1:00 p.m.**

DATED this 20th day of March 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

14